# FOR THE DISTRICT OF NEW MEXICO

JIMMY DEMARS,

      Plaintiff,

v.                                       No.  98cv1399 JP/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Demar's) Motion to Reverse and Remand Administrative Decision, filed September 13, 1999. The Commissioner of Social Security issued a final decision denying Demars' application for disability insurance benefits and for supplemental security income benefits.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion is well taken and recommends that it be GRANTED.

Demars, now forty-five years old, filed his applications for disability insurance benefits and for supplemental security income benefits on February 16, 1996, alleging disability since January 17, 1995.  Demars claimed the following impairments: 1) tendonitis; 2) bipolar disorder; 3) agoraphobia; and 4) alcohol dependence.  On October 21, 1997, the Commissioner's Administrative Law Judge (ALJ) denied benefits because he found Demars could perform the full range of sedentary work and there was other work in the regional economy Demars could

perform.  On September 23, 1998, the Appeals Council concluded there was no basis under

Social Security Administration regulations for granting Demars' request for review.  Thus, the

decision of the ALJ became the final decision of the Commissioner for judicial review purposes.

Demars seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

In his October 21, 1997 decision, the ALJ found Demars had tendonitis, a severe medical

impairment by regulatory definition.  Tr. 13.  However, the ALJ found Demars' tendonitis did not

meet or equal any listed impairment. *Id.*   The ALJ also found Demars had bipolar syndrome with

a history of episodic periods manifested by the full symptomatic picture of both manic and

depressive syndromes as outlined in the A-Criteria of Bipolar Disorder, Listing 12.04(A).[1]  *Id.*  In

---

[1]  Listing 12.04(A)(3) states in pertinent part:

*Affective Disorders:*  Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
    A.  Medically documented persistence, either continuous or intermittent, of one of the following:
                    * * * * * * * *
    3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); **AND**

    B.  Resulting in at least two of the following:

    1.  Marked restriction of activities of daily living; or
    2.  Marked difficulties in maintaining social functioning; or
    3.  Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
    4.  Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms  (which may include deterioration of adaptive behavior).

addition, the ALJ found Demars had behavioral changes associated with the regular use of substances affecting the central nervous system as outlined in the A-Criteria for Substance Addiction Disorder, Listing 12.09(A).[2] *Id.* The ALJ found that under the B-Criteria analysis Demars' bipolar disorder and substance addiction disorder was a severe mental impairment. Tr. 16.

However, the ALJ found that although Demars has a severe mental impairment he had the ability to understand, carry out and remember simple instructions, use judgment, respond appropriately to supervision, coworkers and work situations and was capable of dealing with changes in a routine work setting. *Id.* Accordingly, the ALJ concluded Demars could perform the full range of sedentary work. *Id.* The ALJ came to this conclusion based on the following: (1) Dr. Jones' report that Demars was capable of simple, repetitive work; (2) Dr. Hollingsworth's and Mr. Petsonk's reports that Demars was medication compliant, attended regular counseling sessions and his bipolar disorder and substance addiction disorder were both in remission; (3) Demars was now attending Eastern New Mexico University full-time and was doing well; (4)

---

[2] Listing 12.09(A) states in pertinent part:

*Substance Addiction Disorders:* Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.

The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.

    A.  Organic mental disorders.

Demars' ability to do well in activities of daily living, social functioning and concentration when he stayed off drugs and alcohol (ALJ's B-Criteria analysis); (5) Demars' routine of walking and exercising on a daily basis; and (6) Demars' physical condition was consistent with sedentary work. *Id.*

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Demars makes the following arguments:

(1) the ALJ erred in mechanically applying the Medical-Vocational "Grids" and in failing to obtain

Vocational Expert testimony in analyzing whether the claimant could perform other work in the

National/Regional Economy; (2) the ALJ erred in improperly relying on the opinions of non-

examining physicians; and (3) the ALJ erred in failing to develop the record regarding the

claimant's mental impairments and in improperly determining that the claimant's mental

impairment only had a slight impact on his mental functioning.

In response, the Commissioner argues, *inter alia,* that review of these issues is barred

because Demars failed to specifically raise them before the Appeals Council as required by *James*

*v. Chater,* 96 F.3d 1341 (10th Cir. 1996). In *James,* the Tenth Circuit held issues not brought to

the attention of the Appeals Council on administrative review may be deemed waived on

subsequent judicial review. *James*, 96 F.3d at 1344. *James* applies prospectively from September

19, 1996. *Id.* Demars filed his request for review on December 12, 1997. Demars did not raise

any specific points in his generalized, one-sentence request for review which was filed by his

attorney. Tr. 6. Demars was represented by counsel during the administrative proceedings. In

light of the foregoing considerations, judicial review of the specific issues is barred by *James.*

However, because the *James* opinion is on questionable footing in light of *Johnson v Apfel*, 189

F.3d 561 (7th Cir. 1999), the Court will decide the case on the merits. *See Jones v. Apfel*, 202

F.3d 282, 200 WL 3875 (10th Cir. 2000)(unpublished opinion).

In any case, the issue raised by Demars concerning the ALJ's "mechanical" application of the Medical-Vocational Guidelines (grids) warrants remand for further proceedings. Although the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids, use of the grids is foreclosed to the extent that nonexertional impairments further limit the range of jobs available to the claimant. *Channel v. Heckler*, 747 F.2d 577, 583 n. 6 (10th Cir. 1984). In other words, the grids should not be applied conclusively unless the claimant could perform the full range of work required of that category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range. *Id.* Moreover, "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991).

In this case, the ALJ's conclusion that "claimant has the RFC to perform the full range of sedentary work" because "his tendinitis (sic), bipolar disorder and substance addiction disorder do not reduce his RFC below that of sedentary work" is not supported by substantial evidence. The record clearly establishes Demars' pain and mental impairments limit his ability to work. The ALJ relied on the report of a non-examining physician, Dr. Jones, to support his conclusion. Dr. Jones concluded Demars was "capable of simple, repetitive work under close supervision." Tr. 98. However, Demars' reported having pain when he dressed, made his bed, cleaned, and washed dishes. Tr. 92. He further reported having to take frequent breaks after each task due to the pain. *Id.* Dr. Purpura reported that on examination he found Demars had reproducible pain and symptomatology with percussion over the radial nerve indicating of nerve impingement syndrome. Tr.113. On October 12 and 13, 1995, Demars had an upper extremity functional capacity

6

evaluation done at the Roswell Hand Clinic and Occupational Therapy Center, Inc. At that time, the evaluator's findings were consistent with Demars' complaints of pain. Based on lift and carry performance, the evaluator found Demars only had a sedentary work capacity because his maximum two-handed lift and carry was 15 lbs. Tr. 129. Moreover, the evaluator commented that even at the low weight of 15 lbs. Demars had pain symptomatology. *Id.* In addition, the evaluator found that Demars did poorly with writing activity, requiring frequent rest and exhibited pain behaviors such as rubbing his right elbow and hand . *Id.* On February 12, 1996, Dr. Sloan examined Demars for increased pain of the right arm. Tr. 141. At that time, Demars reported it was too painful to continue working at the convenience store or to do household chores. *Id.*

In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)(citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).

In this case, the ALJ found Demars had "no indication of muscle atrophy, swelling, muscle spasm . . . no neurological dysfunctions or deterioration." Tr. 19. The ALJ further found "claimant does not use a cane to walk about . . . ambulates normally." *Id.* This is contrary to the evidence. The record reflects Demars wore a brace continuously for his tendonitis, had swelling and ulnar neuritis. That he did not require the use of a cane or that he walked normally was irrelevant. Demars' pain was located in his right arm.

In terms of his bipolar disorder and substance addiction disorder, the ALJ found Demars had slight impairment in activities of daily living, slight impairment in social functioning, seldom

had deficiencies in concentration, persistence and pace, and found decompensation in a work setting once. Tr. 16. This determination is not supported by substantial evidence. The ALJ relied on Dr. Jones' report. Dr. Jones reported Demars was "currently slightly manic and grandiose, but is receiving no treatment or medication for his symptoms." Tr. 100. However, Dr. Beale, a psychiatrist, examined Demars on July 13, 1996 and found "patient presently is in his hypomanic state, and cannot concentrate or work." Tr. 164. Dr. Beale further found "patient can be rehabilitated, however, with the right amount of money, place in treatment, and time with this patient . . . but without these interventions, this patient will be a complete and total invalid and unable to contribute to this own necessities in society." Tr. 164.

The ALJ also relied on Dr. Hollingsworth's and Marty Petsonk's reports. They reported Demars was doing well on medication and his bipolar disorder was in remission. Tr. 170. However, Demars reported that, although he suffered manic and depressive episodes less frequently while on medication, he was still having them. Tr. 46, 47. Demars reported his manic episodes lasted about five days and were followed by a longer depressive episode of seven to ten days. Tr. 41. During these episodes Demars is totally incapacitated. Tr. 41-43. The record clearly establishes Demars' mental impairment also limits his ability to do work. Accordingly, in light of all the evidence of record, it was improper for the ALJ to rely solely on the grids at step five. Therefore, the Court will remand the case in order for the ALJ to obtain vocational expert testimony at step five and to adequately address Demars' mental impairment in combination with the effects of the right arm pain he suffers.

## RECOMMENDED DISPOSITION

The ALJ's decision is not supported by substantial evidence. Demars' Motion to Reverse

and Remand Administrative Decision, filed September 13, 1999, should be granted. This case should be remanded to the Commissioner to allow the ALJ to have a vocational consultant testify as to whether Demars' mental impairment in combination with the effects of the pain he suffers preclude him from performing sedentary work.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.